**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Snow Scott, | No. CV-20-01845-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is a motion for an additional award of attorneys' fees under 42 U.S.C. § 406(b) in the amount of $19,094.75 (Doc. 38)—an earlier award of attorneys' fees under § 406(b) having already been granted in the amount of $31,009.93 (Doc. 37)—submitted by Plaintiff's counsel, Mark Caldwell ("Counsel"), which the Commissioner does not oppose[1] (Doc. 44). For the following reasons, the motion is denied.

## BACKGROUND

On September 22, 2020, Plaintiff filed the complaint. (Doc. 1.)

On June 9, 2021, the Commissioner filed the answer (Doc. 18) and administrative record (Doc. 19).

On September 29, 2021, Plaintiff filed the opening brief. (Doc. 22.)

On December 22, 2021, the parties stipulated to remand. (Doc. 26.)

---

[1] The Commissioner "has no direct financial stake in the answer to the § 406(b) question" because the fees, if granted, will be taken out of Plaintiff's past-due benefits, and therefore the Commissioner's role "resembl[es] that of a trustee for the claimants." *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002).

On March 21, 2022, Plaintiff filed a motion seeking $14,059 in attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), which the Court granted. (Docs. 29, 30, 31.)

On December 15, 2024, Counsel filed a motion seeking $31,009.93 in attorneys' fees under § 406(b), which the Court granted. (Docs. 33, 34, 37.)

On March 16, 2025, Counsel filed the pending motion and memorandum for additional attorneys' fees under § 406(b). (Docs. 38, 43.)[2]

**DISCUSSION**

The client-attorney fee agreement provides for a contingency fee—Plaintiff agreed that the attorneys' fee would be 25% of all past-due benefits. (Doc. 43-2.) This is unsurprising, as 25% contingency fee agreements are nearly ubiquitous in the context of social security appeals. *Gisbrecht v. Barnhart*, 535 U.S. 789, 802-04 (2002).

Section 406(b) "calls for court review" of contingency fee agreements. *Id.* at 807-08. "Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits." *Id.* "Within the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Id.*

The Court must determine whether it is appropriate to reduce Counsel's recovery "based on the character of the representation and the results the representative achieved" by assessing, for example, whether Counsel is "responsible for delay" or whether "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* at 808. "Because the SSA has no direct interest in how much of the award goes to counsel and how much to the disabled person, the district court has an affirmative duty to assure that the reasonableness of the fee is established." *Crawford v. Astrue*, 586 F.3d 1142, 1149

---

[2] The § 406(b) fees already awarded amounted to 25% of Plaintiff's past-due benefits, whereas the § 406(b) fees sought in the supplemental motion amount to 25% of Plaintiff's dependent's past-due benefits. (Doc. 43 at 1.) "[A]uxiliary back benefits (benefits payable to the claimant's dependents) are included in the total amount of back benefits to be considered for purposes of attorneys' fees under 42 U.S.C. § 406(b)." *Arias v. Comm'r of Soc. Sec.*, 2020 WL 4923617, *1 (E.D. Cal. 2020).

- 2 -

(9th Cir. 2009). "It must be remembered that every dollar that goes to the attorney comes out of an award that otherwise should be going to a person whom the law has said is exceedingly needy." *Ashing v. Astrue*, 798 F. Supp. 2d 1143, 1147 (C.D. Cal. 2011).

The Court will therefore analyze the reasonableness of the requested award. Section 406(b) "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht*, 535 U.S. at 807. This determination does not equate to use of the lodestar method. *Crawford*, 586 F.3d at 1149 ("The lodestar method under-compensates attorneys for the risk they assume in representing SSDI claimants and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement. A district court's use of the lodestar to determine a reasonable fee thus ultimately works to the disadvantage of SSDI claimants who need counsel to recover any past-due benefits at all."). "[A] district court charged with determining a reasonable fee award under § 406(b)(1)(A) must respect 'the primacy of lawful attorney-client fee agreements,' 'looking first to the contingent-fee agreement, then testing it for reasonableness.'" *Id.* at 1148 (quoting *Gisbrecht*, 535 U.S. at 793, 808.) The Court must determine whether it is appropriate to reduce Counsel's recovery from the contingency fee to "disallow windfalls for lawyers." *Gisbrecht*, 535 U.S. at 808 (cleaned up). "The attorney bears the burden of establishing that the fee sought is reasonable." *Crawford*, 586 F.3d at 1148.

Here, there is no need to reduce the fee award due to "substandard performance" or "dilatory conduct." *Id.* at 1151. The Court's sole concern is that "the benefits are large in comparison to the amount of time counsel spent on the case." *Gisbrecht*, 535 U.S. at 808.

Counsel's request for an additional $19,094.75, when added to the original § 406(b) award of $31,009.93, would result in a total award under § 406(b) of $50,104.68. Such an award would far exceed the range of § 406(b) awards that are typical for Social Security appeals. *See, e.g.*, *Solomon v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4355635, *5 (D. Ariz. Sept. 24, 2021) ("The Court will reduce the award to $26,825.00, which the Court considers to be the high end of what could reasonably be awarded in a case of this level of

- 3 -

risk and complexity."). Furthermore, this case was remanded pursuant to the parties' stipulation before the answering brief and reply brief were filed, necessitating less attorney work than a fully-briefed appeal.

Counsel submitted a summary of the attorney hours spent litigating this case, totaling 65.5 hours. (Doc. 43-3.) If these hours were fully compensable, the *de facto* hourly rate for the total award of $50,104.68 would be $765 per hour.

On the one hand, that rate does not far exceed what courts in this District have deemed reasonable. *Solomon*, 2021 WL 4355635 at *5 ("The prevailing non-contingent rate in the Phoenix market is $250.00 per hour, and courts in the District of Arizona have reduced § 406(b) fee awards to an amount approximately three times higher than this rate, a *de facto* rate of $750 or thereabout.") (cleaned up); *see also Snyder v. Berryhill*, 2018 WL 905143, *2 (D. Ariz. 2018) ("Any greater award [than $750 per hour] would result in an improper windfall to [p]laintiff's counsel contrary to *Gisbrecht*.").

However, 65.5 hours is an unusually high amount of time spent litigating a Social Security appeal, particularly one that was resolved via stipulation following the filing of the opening brief. By way of comparison, in *Andreason v. Commissioner of Social Security Administration*, 2:18-cv-04102-DWL, a case that was fully briefed, Counsel spent 43 hours total—six hours of which were spent preparing the reply brief. (*Andreason*, Doc. 17-3.) In *Sharp v. Commissioner of Social Security Administration*, 3:17-cv-08133-DWL, another case that was fully briefed, Counsel spent 40.7 hours total, 2.5 hours of which were spent preparing the reply brief and over eight hours of which were spent on a motion for reconsideration. (*Sharp*, Doc. 26-3.) In *Greess v. Commissioner of Social Security Administration*, 2:20-cv-00170-DJH, a case in which the parties stipulated to remand after the opening brief was filed, Counsel logged 48.2 hours total. (*Greess*, Doc. 32-3.) However, in that case, Judge Humetewa reduced the 11.6 hours Counsel billed for work on the complaint to 9.3 compensable hours, reduced the 14.5 hours Counsel billed for reviewing the opening brief to 8.8 compensable hours (such that 22.9 hours total were determined to be compensable for drafting and reviewing the opening brief), and reduced

the one hour of time billed for reviewing already-filed filings to one half hour of compensable time. *Greess v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1239208, *2-3 (D. Ariz. 2022).

Here, Counsel spent 19.4 hours in 2020, even though the complaint was Counsel's only work product in 2020. (Doc. 43-3 at 2-3.) The nine-page complaint contains large blocks of quoted text from legal orders (Doc. 1), such that the complaint's "legal arguments are quite plainly boilerplate language that may be used in any number of complaints." *Greess,* 2022 WL 1239208 at *2. Although "it is certainly reasonable for counsel to review the administrative record and prepare a well-written [complaint]," *id.*, it is difficult to understand how more than 5-10 hours maximum could be justified for the work done in 2020.

The Court has emphasized in the past and reiterates now that "it [is] a given that a competent lawyer would review the case before drafting and filing a complaint," that "thorough preparation at the inception of a case is an earmark of capable representation," and that "time spent at the complaint stage is time that [could] serve counsel well when the merits briefs are eventually prepared." *Murrieta v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1208980, *3 (D. Ariz. 2021). In *Murrieta*, the Court rejected an argument that it was unreasonable for Counsel to spend 4.7 hours reviewing the record and drafting an 11-page complaint, quoting the oft-quoted chestnut from *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008): "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." 2021 WL 1208980 at *3. But such deference is not unlimited, and the Court cannot accept that 19.4 hours can reasonably be spent reviewing the record and drafting the complaint, at least not unless some rather extraordinary circumstances attended such a herculean effort. None appear here.

Furthermore, the significant amount of time spent in 2020 did not result in a reduction of time spent on the opening brief, which was the only work product in 2021, for

which 46.1 hours were billed. (The stipulated motion for remand itself is only one page long, was drafted and filed by the Commissioner, and quite clearly did not require over three hours of time on Counsel's part, which is what is recorded in Counsel's time log. The Court does not consider time spent on the stipulation for remand "and detailed memo" following the stipulation to amount to compensable time for 2021.) The opening brief is a high-quality brief that resulted in a favorable outcome (the stipulation to remand). Generally, the Court "will not second-guess the amount of time Plaintiff's counsel spent on briefing the winning arguments in this case," *id.*, but the amount of time spent on the opening brief appears excessive, even with the Court's typical deference.

Counsel does not set forth any factors that make this specific case a particularly risky one, compared to the general risk that always inheres in representation on a contingency basis, and the Court cannot independently perceive any. Nor were the factual and legal issues particularly complex. Counsel highlights his considerable experience practicing Social Security disability law in Arizona (Doc. 43 at 6), and the Court agrees that Counsel is a fine attorney. Nevertheless, this alone does not justify an award of the magnitude sought. Counsel has not met his "burden of establishing that the fee sought is reasonable." *Crawford*, 586 F.3d at 1148.

The Court finds that the benefits are "large in comparison to the amount of time counsel spent on the case" and "a downward adjustment" is "in order." *Gisbrecht*, 535 U.S. 789, 808. Having determined that there is no unusual complexity or risk involved in this case, and keeping in mind that "reasonable contingency fees generally should exceed a reasonable lodestar," *Biggerstaff v. Saul*, 840 F. App'x 69, 71 (9th Cir. 2020), the Court is now tasked with determining how great a reduction from the total requested contingency award of $50,104.68 is appropriate.

The Court must make this determination as an exercise of discretion, and courts have reached widely disparate conclusions as to the reasonable *de facto* rate in a case where there is no special complexity or higher-than-usual risk. For example, in a case involving "a complex application for Social Security benefits" in which the district court

acknowledged that "counsel undertook some risk in agreeing to represent this plaintiff on a contingency basis, and successfully represented his client in a case that was disputed by defendant and required skill and expertise," the district court determined that an award of $30,623.75 was "not in proportion to" the 51.5 hours the attorney spent on the case. *Carlson v. Astrue*, 2010 WL 2813427, *4 (D. Or. 2010). The district court reduced the award to $24,499, or 20% of the past-due benefits—a reduction of the *de facto* hourly rate from $594.64 per hour to $475.71 per hour. *Id.* The Ninth Circuit affirmed, holding that "[t]he district court did not abuse its discretion by reducing the fees from the amount specified in the fee agreement based on the court's assessment of what was reasonable given the risk and complexity involved in this case." *Carlson v. Comm'r of Soc. Sec. Admin.*, 467 F. App'x 591, 592 (9th Cir. 2012).[3]

In *Biggerstaff*, the Ninth Circuit affirmed a district court's decision to reduce the contracted contingency fee of $65,109 to $32,760—nearly a 50% reduction—which, even after the sharp reduction, amounted to a *de facto* rate of $1,400 per hour. 840 F. App'x at 69-71. The district court noted that there was "no evidence that the underlying issues in the action were complex or novel" and that plaintiff's counsel had "not shown that, at the time counsel first was retained, the likelihood of securing benefits for plaintiff was highly unlikely, highly likely, or somewhere in between"—but nevertheless, counsel sought an award that was "approximately 3.79 times" the high end of the "median hourly attorney rate for consumer law attorneys in California in 2015 and 2016." *Biggerstaff v. Saul*, 2019 WL 4138015, *4 (C.D. Cal. 2019). The district court concluded that "[a]lthough a

---

[3] The Ninth Circuit's affirmance of a reduced award that amounts to a *de facto* hourly rate of $475.71 per hour demonstrates that the higher awards ordered in *Crawford* do not establish a floor for what is reasonable in every case. The determination of whether an award is reasonable remains case-specific. Although the Ninth Circuit instructed the district court to award fees without reduction at a *de facto* hourly rate of "$519 in *Washington,* $875 in *Crawford,* and $902 in *Trejo*," it did not discuss the level of complexity or risk in each of these cases. *Crawford*, 586 F.3d at 1153 (Clifton, J., dissenting). Without that information, the bare amount of these awards is of limited use. *Crawford,* 586 F.3d at 1152-53 (majority opinion) (explaining that courts should assess "the complexity and risk involved in the specific case at issue," rather than social security cases in general, when analyzing the reasonableness of the requested fees).

- 7 -

reasonable contingent fee recovery generally should well exceed a reasonable lodestar, the extraordinary disparity here between what is reported for consumer law attorneys and counsel's request weakens counsel's argument that the requested fee would be reasonable." *Id.*[4] On appeal, the Ninth Circuit held that "[c]onsidering the district court is accustomed to making reasonableness determinations . . . and its assessments qualify for highly respectful review," the amount of fees awarded was not error. *Id.* at 71.

This Court routinely approves, without any reduction for reasonableness, fee applications where the amount requested is in a more typical range—for a case of ordinary complexity and risk, an award between $9,500 and $17,000 is quite common and usually amounts to a *de facto* hourly rate between $350 to $410. *See, e.g.*, *Vega v. Commissioner of Social Security Administration*, 2:18-cv-01552-DWL ($13,493.25 award, 36.3 hours billed, $371.71 *de facto* hourly rate); *Bello v. Commissioner of Social Security Administration*, 2:18-cv-01620-DWL ($16,776.50 award, 41.7 hours billed, $402.31 *de facto* hourly rate); *Cox v. Commissioner of Social Security Administration*, 3:18-cv-08335-DWL ($9,528.40 award, 23.2 hours billed, $410.71 *de facto* hourly rate); *Eastes v. Commissioner of Social Security Administration*, 2:18-cv-00013-DWL ($13,394.75 award, 35.4 hours billed, $378.38 *de facto* hourly rate); *Sharp v. Commissioner of Social Security Administration*, 2:17-cv-08133-DWL ($14,816.40 award, 40.7 hours billed, $364.04 *de facto* hourly rate). This bears mentioning because it at least establishes a baseline—albeit not a ceiling—for what can easily be determined to be reasonable in a case of average complexity and risk.

The distinguishing factors in the case at hand are that the amount of past-due

---

[4] The district court "acknowledge[d] the regrettable imprecision of the analysis through which the Court has determined a 'reasonable' fee," *Biggerstaff*, 2019 WL 4138015 at *4, and quoted Justice Scalia's dissenting opinion in *Gisbrecht*, which criticized the majority opinion for doing "nothing whatever to subject these fees to anything approximating a uniform rule of law" and for "trying to combine the incompatible"—that is, for "tell[ing] the judge to commence his analysis with the contingent-fee agreement, but then to adjust the figure . . . on the basis of factors [including the proportion of time spent to the size of the award]," which is "the precise antithesis of the contingent-fee agreement." *Gisbrecht*, 535 U.S. at 809 (Scalia, J., dissenting).

- 8 -

benefits is much higher, and so too, the number of hours billed is much higher, resulting in a *de facto* hourly rate of $765 per hour, a rate that is elevated from the norm but, as discussed above, not out of the range of *de facto* rates allowed by courts in the District of Arizona. However, in terms of the level of complexity, some of these cases are indistinguishable.

The starting point for the analysis is determining how much of the 65.5 hours billed is time reasonably spent. As a preliminary matter, Counsel did not bill time for clerical tasks or other non-compensable work. *See, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("Time billed for clerical tasks should not be included in the award because such tasks should be subsumed in firm overhead rather than billed."). That leaves the Court with only the imprecise task of determining the degree to which excessive time was spent on otherwise compensable work.

As discussed above, it is difficult to understand how more than 5-10 hours maximum could be justified for the work Counsel recorded in 2020, and therefore a 9.4 hour reduction is warranted for 2020.

As for the 46.1 hours spent re-reviewing the record and preparing the opening brief, the Court considers, by way of contrast, *Murrieta v. Commissioner of Social Security Administration*, 2:19-cv-04865-DWL, a case in which Counsel filed a motion for leave to file an oversized brief because extra pages were "necessary to adequately brief this Court on the treating history and medical issues involved in the case," such that the opening brief was 27 pages long plus a 10-page glossary. (*Murietta*, Docs. 16, 18, 19.) Counsel spent 46.9 total hours working on *Murietta* (a fully briefed case), 31.5 hours of which were spent on re-reviewing the record and drafting the oversized opening brief. (*Murietta*, Doc. 27-2.) Counsel emphasized his own thoroughness in preparing his drafts in *Murietta*, stating, "If 'representational overkill' results in a disabled claimant receiving much-needed benefits, then to borrow from [William Shakespeare], 'if it be a sin to covet honor, I am the most offending soul alive.'" (*Murietta*, Doc. 30 at 2 n.3.) Nevertheless, Counsel was able to provide the best possible representation by spending 31.5 hours on the oversized

opening brief. The issues in this case do not appear to be more complex than those in *Murietta*. True, the record in *Murietta* was 1,908 pages long (*id.*), compared to the 4,000-page record in the case at hand (Doc. 43-3). However, here, after Counsel spent many hours[5] in 2020 reviewing the record, drafting a "memo summarizing evidence," conducting legal research, and selecting exhibits for a "case notebook," the task of re-reviewing the record in 2021 should have been streamlined.

These details from *Murietta* are set forth only for the sake of comparison—every case is different and must be considered anew, without uncritically applying caps derived from other cases. Nevertheless, comparisons to other cases provide the Court some guidance in determining what can be deemed reasonable. In *Andreason*, Counsel spent 24 hours reviewing case documents and drafting the opening brief. (*Andreason*, 2:18-cv-04102-DWL, Doc. 17-2.) In *Sharp*, 8.5 hours were spent on these tasks. (*Sharp*, 3:17-cv-08133-DWL, Doc. 26-3.) In *Greess*, the amount of time spent on the opening brief was logged as 28.6 hours and was judicially reduced to 22.9 hours of compensable time. 2022 WL 1239208 at *2-3.

The Court concludes that the amount of time spent on the opening brief in this case should be reduced by 14.1 hours, such that 32 hours of time is deemed compensable. Thus, the 65.5 hours logged are subject to a 9.4-hour reduction for time spent in 2020, a 14.1-hour reduction for time spent on re-reviewing the record and drafting the opening brief in 2021, and a 3-hour reduction for the time spent reviewing the stipulation to remand and preparing a memo thereafter, such that the highest possible amount of compensable time for this case is 39 hours.[6]

The amount of § 406(b) fees already awarded—$31,009.93—has resulted in a *de facto* hourly rate of $795.13 when this 39-hour figure is used, which aligns with (or

---

[5] Due to block billing, it is impossible to ascertain precisely how many hours were spent on each task.

[6] To be sure, competent representation could and often does take much less time than this. This "highest possible amount of compensable time" embraces deference to Counsel's diligence and oft-professed belief in the value of high-quality work, a belief the Court respects and appreciates.

- 10 -

exceeds) the amount judges in this district have found to be at the high end of reasonable for a case of ordinary complexity. *Solomon*, 2021 WL 4355635 at *5 (collecting cases).[7] The Court concludes that any additional award under § 406(b) would constitute a windfall.

Accordingly,

**IT IS ORDERED** that Counsel's motion for an additional award of attorneys' fees under 42 U.S.C. § 406(b) (Doc. 43) is **denied**.

Dated this 22nd day of August, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[7] The Court notes that the "high end of reasonable" is not static and is constantly subject to modest increases for inflation.

- 11 -